IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **CLOUD CONTROLS LLC,**<br><br>  Plaintiff,<br>**v.**<br><br>**ONEPLUS TECHNOLOGY (SHENZEN) CO., LTD.,**<br><br>  Defendant. | Case No. 2:25-cv-1247<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Cloud Controls LLC ("CC" or "Plaintiff") files this Original Complaint for patent infringement against OnePlus Technology (Shenzen) Co., Ltd. ("Defendant") alleging as follows:

## BACKGROUND AND NATURE OF THE SUIT

1.  This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  This case asserts infringement of United States Patent Nos. 10,025,552 (the "'552 Patent"), 9,621,699 (the "'699 Patent"), 9,585,003 (the "'003 Patent"), and 7,167,703 (the "'703 Patent") (collectively, "the Patents-in-Suit").

2.  The Patents-in-Suit are owned by CC.

## THE PARTIES

3.  Cloud Controls LLC is a limited liability company filed under the laws of the State of Texas, with its principal place of business at 5900 Balcones Drive, Suite 100, Austin TX 78731.

4.  Defendant is a corporation organized and existing under the laws of China with its principal place of business at F18, Block C, Tairan Building, Tairan 8th Road, Chegongmiao, Futian District, Shenzhen, China.

## JURISDICTION AND VENUE

5.     This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

6.     Defendant has regularly and systematically transacted business in Texas, directly or through subsidiaries or intermediaries, and/or committed acts of patent infringement in Texas as alleged more particularly below.

7.     Defendant has placed infringing products into the stream of commerce by selling those products in Texas (including the Eastern District) through its online store (https://www.oneplus.com/us/store), shipping those products into Texas (including the Eastern District), or knowing that the products would be shipped into Texas (including the Eastern District).

8.     Defendant also utilizes established distribution channels in this district to distribute, market, offer for sale, sell, and service infringing products directly to customers and other users in the district.  For example, the accused OnePlus 13 is available for purchase at the Best Buy location at 2800 N Central Expy, Plano, Texas 75074.

9.     Defendant has also committed acts of infringement in this district by commercializing, marketing, selling, distributing, and servicing the Accused Products.

10.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391 because Defendant has committed acts of infringement in this district.

## THE PATENTS-IN-SUIT

### The '552 Patent

11. The '552 Patent, titled "Selective Locking of Input Controls of a Portable Media Player," was issued on July 17, 2018, and expires on January 8, 2028. A copy of the '552 Patent is attached as Exhibit A.

12. The claims of the '552 Patent are not directed to an abstract idea. For example, claim 1 of the '552 Patent recites a system for the selective locking of user controls in a portable media player. When enabled, the selective locking system prevents operation of input controls on the portable media player made by the user based on whether the device is in a locked state, as well as the individual operation mode. In some embodiments, the portable media player can predictively or automatically select the lock state and individual operation mode. Taken as a whole, the claimed inventions of the '552 Patent are not limited to well-understood, routine, or conventional activity. For example, as the '552 Patent explains, conventional media player devices caused "many users [to] be undesirably restricted by current player locking mechanisms." Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of portable media players.

13. The written description of the '552 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

14. CC is the owner and assignee of all rights, title, and interest in and under the '552 Patent.

15. CC has standing to sue for infringement of the '552 Patent.

**The '699 Patent**

16. The '699 Patent, titled "Mobile Digital Communication/Computing Device Having a Context Sensitive Audio System," was issued on April 11, 2017, and expired on October 14, 2023. A copy of the '699 Patent is attached as Exhibit B.

17. The claims of the '699 Patent are not directed to an abstract idea. For example, claim 10 of the '699 Patent recites a mobile client device. The mobile client device includes means for providing first and second audio signals at different audio volume levels. The second audio volume level is non-intrusively lower than the first audio volume level initially, but increases to a discernable volume level higher than the first audio volume level until the user responds to the second audio signal. Taken as a whole, the claimed inventions of the '699 Patent are not limited to well-understood, routine, or conventional activity. For example, the '699 Patent explains that mobile client devices at the time of the claimed inventions were only beginning to incorporate multimedia capabilities. As a result, "the playing of the music may interfere with the delivery of a message alert for an incoming call and vice versa." The claimed invention provides nonconventional devices and methods of providing "a more context sensitive way of notifying a user of an alert tone while an audio system is being utilized by multi-media resources." Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of mobile client devices.

18. The written description of the '699 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

19. CC is the owner and assignee of all rights, title, and interest in and under the '699 Patent.

20. CC has standing to sue for infringement of the '699 Patent.

**The '003 Patent**

21. The '003 Patent, titled "Serving Data/Applications from a Wireless Mobile Phone," was issued on February 28, 2017, and expired on November 10, 2025. A copy of the '003 Patent is attached as Exhibit C.

22. The claims of the '003 Patent are not directed to an abstract idea. For example, claim 1 of the '003 Patent recites a specific method for serving data or applications from mobile devices. The mobile devices work with computing devices such as client computers, domain name servers, proxy servers, and other phones equipped with the technology to practice the method. The method involves the mobile device establishing a data connection to a data network and a computing device locating the data or application on the mobile device, among other things. Taken as a whole, the claimed inventions of the '003 Patent are not limited to well-understood, routine, or conventional activity. For example, the '003 Patent explains that the user's wireless mobile phones, domain name servers, and proxy servers implement nonconventional "logic and functions to bridge the fact that [the user's wireless mobile phone] generally does not have a persistent connection to the Internet, nor a persistent IP address." Accordingly, the claimed inventions include inventive components that improve upon the methods of serving data.

23. The written description of the '003 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how

the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

24. CC is the owner and assignee of all rights, title, and interest in and under the '003 Patent.

25. CC has standing to sue for infringement of the '003 Patent.

**The '703 Patent**

26. The '703 Patent, titled "Wireless Mobile Image Messaging," was issued on January 23, 2007, and expired on September 14, 2024. A copy of the '703 Patent is attached as <u>Exhibit D</u>.

27. The claims of the '703 Patent are not directed to an abstract idea. For example, claim 1 of the '703 Patent recites a method of operation for a wireless mobile device capable of sending messages to another mobile device to facilitate communication between the users. The method permits the user of the wireless mobile device to graphically convey information about the user, by, for example, selecting images from a plurality of images. The wireless mobile device then transmits that image to the other wireless mobile device. Taken as a whole, the claimed inventions of the '703 Patent are not limited to well-understood, routine, or conventional activity. For example, the '703 Patent explains that wireless mobile devices at the time of the claimed inventions had "limited input capabilities." The claimed invention provides nonconventional devices and methods for "facilitating non-verbal communications between users of wireless mobile devices, such as cellular telephones, using image messages." Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of the sending and receiving of image messages between users of mobile devices.

28. The written description of the '703 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

29. CC is the owner and assignee of all rights, title, and interest in and under the '703 Patent.

30. CC has standing to sue for infringement of the '703 Patent.

**GENERAL ALLEGATIONS OF PATENT INFRINGEMENT**

31. As detailed below and in the accompanying claim charts (Exhibits E-H), Defendant has infringed (and continues to infringe) one or more claims of the Patents-in-Suit by using, selling, offering for sale, and/or importing into the United States at least, for example, the following products (the "Accused Products") that illustrate Defendant's infringement: Smartphones (e.g., "Nord" series (e.g., Nord N10 5G, Nord N100, Nord N200 5G, Nord N20 5G, Nord N300 5G, Nord N30 5G), OnePlus 7 Pro, OnePlus 7 Pro 5G, OnePlus 7T, OnePlus 7T Pro 5G McLaren, OnePlus 8, OnePlus 8 Pro, OnePlus 8T, OnePlus 9, OnePlus 9 Pro, OnePlus 10 Pro, OnePlus 10T, OnePlus 11, OnePlus 12, OnePlus 12R, OnePlus 13, OnePlus 13R, and OnePlus Open), Tablets (e.g., OnePlus Pad, OnePlus Pad 2, and OnePlus Pad 3), and Earbuds (e.g., "Nord" series (e.g., OnePlus Nord Buds, OnePlus Nord Buds 2, OnePlus Nord Buds 3, OnePlus Nord Buds 3 Pro), "Bullets Wireless" series (e.g., OnePlus Bullets Wireless, OnePlus Bullets Wireless 2, OnePlus Bullets Wireless Z, OnePlus Bullets Wireless Z2, OnePlus Bullets Wireless Z3), OnePlus Buds, OnePlus Buds Z, OnePlus Buds Z2, OnePlus Buds Pro, OnePlus Buds Pro 2, OnePlus Buds 3, OnePlus Buds 4, and

OnePlus Buds Pro 3).

32. Defendant's acts of infringement have caused damage to CC. CC is entitled to recover from Defendant the damages sustained by CC as a result of Defendant's wrongful acts in an amount subject to proof at trial.

33. Further discovery may reveal earlier knowledge of one or more of the Patents-in-Suit, which would provide additional evidence of Defendant's willful infringement of the Patents-in-Suit.

34. For each count of infringement listed below, CC incorporates and re-states the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

## COUNT I – INFRINGEMENT OF THE '552 PATENT

35. CC incorporates herein the allegations made in paragraphs 1-34.

36. Defendant has directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '552 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

37. An exemplary claim chart demonstrating Defendant's infringement of the '552 Patent is attached as Exhibit E and incorporated herein by reference.

38. Defendant has knowledge of the '552 Patent and of its infringement of the '552 Patent at least through service of the Complaint.

39. On information and belief, despite Defendant's knowledge of the '552 Patent and of its infringement of the '552 Patent, Defendant has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '552 Patent.

40. On information and belief, Defendant's actions represented a specific intent to

induce infringement of at least claim 1 of the '552 Patent. For example, Defendant offered its customers extensive customer support and instructions that instructed and encouraged its customers to infringe the '552 Patent via at least their use of the Accused Products.

41. Since issuance of the '552 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '552 Patent or that would otherwise require marking under 35 U.S.C. § 287.

42. CC may recover pre-suit damages for Defendant's infringement of the '552 Patent under 35 U.S.C. § 287.

43. As a result of Defendant's infringement of the '552 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

44. Additionally, on information and belief, Defendant has also indirectly infringed one or more claims of the '552 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '552 Patent. Defendant has induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '552 Patent by using the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '552 Patent, including, for example, Claim 1 of the '552 Patent. Such steps by Defendant included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner. Defendant performed these steps, which constitute induced infringement with the knowledge of the '552 Patent and with

the knowledge that the induced acts constitute infringement. Defendant was aware that the normal and customary use of the Accused Products by others would infringe the '552 Patent.

45. Defendant has also indirectly infringed by contributing to the infringement of the '552 Patent. Defendant has contributed to the direct infringement of the '552 Patent by its customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '552 Patent, including, for example, claim 1 of the '552 Patent. The special features include, for example, the selective locking system recited in claim 1, wherein the user may prevent any user input on the portable media player when user locks it. The special features constitute a material part of the invention of one or more of the claims of the '552 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

46. Defendant's direct and indirect infringement of the '552 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT II – INFRINGEMENT OF THE '699 PATENT

47. CC repeats and re-alleges the allegations in Paragraphs 1-46 as though fully set forth in their entirety.

48. Defendant has directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '699 Patent, including, for example, claim 10, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

49. An exemplary claim chart demonstrating Defendant's infringement of the '699 Patent is attached as Exhibit F and incorporated herein by reference.

50. Defendant has knowledge of the '699 Patent and of its infringement of the '699 Patent at least through the service of this Complaint.

51. On information and belief, despite Defendant's knowledge of the '699 Patent and of its infringement of the '699 Patent, Defendant has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '699 Patent.

52. On information and belief, Defendant's actions represented a specific intent to induce infringement of at least claim 10 of the '699 Patent. For example, Defendant offered its customers extensive customer support and instructions that instructed and encouraged its customers to infringe the '699 Patent via at least their use of the Accused Products.

53. Since issuance of the '699 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '699 Patent or that would otherwise require marking under 35 U.S.C. § 287.

54. CC may recover pre-suit damages for Defendant's infringement of the '699 Patent under 35 U.S.C. § 287.

55. As a result of Defendant's infringement of the '699 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

56. Additionally, on information and belief, Defendant has also indirectly infringed one or more claims of the '699 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '699 Patent. Defendant has induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '699 Patent by using the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one

or more claims of the '699 Patent, including, for example, Claim 10 of the '699 Patent. Such steps by Defendant included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner. Defendant performed these steps, which constitute induced infringement with the knowledge of the '699 Patent and with the knowledge that the induced acts constitute infringement. Defendant was aware that the normal and customary use of the Accused Products by others would infringe the '699 Patent.

57. Defendant has also indirectly infringed by contributing to the infringement of the '699 Patent. Defendant has contributed to the direct infringement of the '699 Patent by its customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '699 Patent, including, for example, claim 10 of the '699 Patent. The special features include, for example, providing audio signals at different volume levels, wherein the second audio volume level is non-intrusively lower than the first audio volume level initially, but increases to a discernable volume level higher than the first audio volume level until the user responds to the second audio signal. The special features constitute a material part of the invention of one or more of the claims of the '699 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

58. Defendant's direct and indirect infringement of the '699 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT III – INFRINGEMENT OF THE '003 PATENT

59. CC repeats and re-alleges the allegations in Paragraphs 1-58 as though fully set forth in their entirety.

60. Defendant has directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '003 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

61. An exemplary claim chart demonstrating Defendant's infringement of the '003 Patent is attached as Exhibit G and incorporated herein by reference.

62. Defendant has knowledge of the '003 Patent and of its infringement of the '003 Patent at least through the service of this Complaint.

63. On information and belief, despite Defendant's knowledge of the '003 Patent and of its infringement of the '003 Patent, Defendant has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '003 Patent.

64. On information and belief, Defendant's actions represented a specific intent to induce infringement of at least claim 1 of the '003 Patent. For example, Defendant offered its customers extensive customer support and instructions that instructed and encouraged its customers to infringe the '003 Patent via at least their use of the Accused Products.

65. Since issuance of the '003 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '003 Patent or that would otherwise require marking under 35 U.S.C. § 287.

66. CC may recover pre-suit damages for Defendant's infringement of the '003 Patent under 35 U.S.C. § 287.

67. As a result of Defendant's infringement of the '003 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

68. Additionally, on information and belief, Defendant has also indirectly infringed one or more claims of the '003 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '003 Patent. Defendant has induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '003 Patent by using the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '003 Patent, including, for example, Claim 1 of the '003 Patent. Such steps by Defendant included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner. Defendant performed these steps, which constitute induced infringement with the knowledge of the '003 Patent and with the knowledge that the induced acts constitute infringement. Defendant was aware that the normal and customary use of the Accused Products by others would infringe the '003 Patent.

69. Defendant has also indirectly infringed by contributing to the infringement of the '003 Patent. Defendant has contributed to the direct infringement of the '003 Patent by its customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '003 Patent, including, for example, claim 1 of the '003 Patent. The special features include, for example, serving data or

applications from mobile devices. The special features constitute a material part of the invention of one or more of the claims of the '003 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

70. Defendant's direct and indirect infringement of the '003 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

**COUNT IV – INFRINGEMENT OF THE '703 PATENT**

71. CC repeats and re-alleges the allegations in Paragraphs 1-70 as though fully set forth in their entirety.

72. Defendant has directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '703 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

73. An exemplary claim chart demonstrating Defendant's infringement of the '703 Patent is attached as <u>Exhibit H</u> and incorporated herein by reference.

74. Defendant has knowledge of the '703 Patent and of its infringement of the '703 Patent at least through the service of this Complaint.

75. On information and belief, despite Defendant's knowledge of the '703 Patent and of its infringement of the '703 Patent, Defendant has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '703 Patent.

76. On information and belief, Defendant's actions represented a specific intent to induce infringement of at least claim 1 of the '703 Patent. For example, Defendant offered its customers extensive customer support and instructions that instructed and encouraged its customers to infringe the '703 Patent via at least their use of the Accused Products.

77. Since issuance of the '703 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '703 Patent or that would otherwise require marking under 35 U.S.C. § 287.

78. CC may recover pre-suit damages for Defendant's infringement of the '703 Patent under 35 U.S.C. § 287.

79. As a result of Defendant's infringement of the '703 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

80. Additionally, on information and belief, Defendant has also indirectly infringed one or more claims of the '703 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '703 Patent. Defendant has induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '703 Patent by using the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '703 Patent, including, for example, Claim 1 of the '703 Patent. Such steps by Defendant included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner. Defendant performed these steps, which constitute induced infringement with the knowledge of the '703 Patent and with the knowledge that the induced acts constitute infringement. Defendant was aware that the normal and customary use of the Accused Products by others would infringe the '703 Patent.

81. Defendant has also indirectly infringed by contributing to the infringement of the '703 Patent. Defendant has contributed to the direct infringement of the '703 Patent by its customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '703 Patent, including, for example, claim 1 of the '703 Patent. The special features include, for example, sending image messages from one mobile device to another. The special features constitute a material part of the invention of one or more of the claims of the '703 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

82. Defendant's direct and indirect infringement of the '703 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

CC requests that the Court find in its favor and against Defendant, and that the Court grant CC the following relief:

a. Judgment that one or more claims of the Patents-in-Suit have been infringed, either literally or under the doctrine of equivalents, by Defendant or all others acting in concert therewith;

b. Judgment that Defendant accounts for and pays to CC all damages to and costs incurred by CC because of Defendant's infringing activities and other conduct complained of herein;

c. Judgment that Defendant's infringement be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

  d. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

  e. That this Court declare this an exceptional case and award CC its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

  f. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: December 23, 2025   Respectfully submitted,

By: /s/ *Fred I. Williams*
Fred I. Williams
Texas State Bar No. 07034855
Lea N. Brigtsen
Texas State Bar No. 24054504
Stephen R. Dartt
Texas State Bar No. 24042370
WILLIAMS SIMONS & LANDIS PC
The Littlefield Building
106 East Sixth Street, Suite 900-168
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
lbrigtsen@wsltrial.com
sdartt@wsltrial.com

John Wittenzellner
Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PC
1735 Market Street, Suite 125, #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

*Attorneys for Plaintiff Cloud Controls LLC*